UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. PIERCE DIVISION

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; | ) | |
| CALUSA WATERKEEPER; and | ) | |
| WATERKEEPER ALLIANCE, | ) | |
| | ) | |
|    Plaintiffs, | ) | |
| | ) | CASE NO.: 2:19-cv-14199-DMM |
|       v. | ) | |
| | ) | |
| U.S. ARMY CORPS OF ENGINEERS; | ) | |
| COL. ANDREW KELLY, in his | ) | |
| official capacity as Commander and District | ) | |
| Engineer of the U.S. Army Corps of Engineers; | ) | |
| U.S. DEPARTMENT OF THE INTERIOR; | ) | |
| DAVID BERNHARDT, in his official capacity as | ) | |
| Secretary of the U.S. Department of Interior; | ) | |
| NATIONAL MARINE FISHERIES SERVICE; | ) | |
| DR. ROY E. CRABTREE, in his official capacity | ) | |
| as Regional Administrator of the Southeast | ) | |
| Regional Office of National Marine Fisheries | ) | |
| Service; U.S. FISH AND WILDLIFE SERVICE; | ) | |
| and AURELIA SKIPWITH,[1] in her | ) | |
| official capacity as Director of U.S. Fish and | ) | |
| Wildlife Service, | ) | |
| | ) | |
|       Federal Defendants. | ) | |

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND
## MEMORANDUM OF LAW IN SUPPORT

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Aurelia Skipwith, in her official capacity as Director of the U.S. Fish and Wildlife Service, is automatically substituted for Margaret Everson.

## TABLE OF CONTENTS

MOTION FOR PARTIAL SUMMARY JUDGMENT.................................................................... 1

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ............................................................................................................. 1

INTRODUCTION .......................................................................................................................... 1

LEGAL FRAMEWORK ................................................................................................................ 2

    I.    The National Environmental Policy Act Requires the Corps to Immediately
        Supplement  Its LORS NEPA Analysis ........................................................................ 2

    II.    The Administrative Procedure Act Requires Courts to Hold Unlawful or Set Aside
        Decisions that are Arbitrary or Capricious and to Compel Agency Action
        Unreasonably Delayed ................................................................................................... 4

FACTUAL BACKGROUND.......................................................................................................... 4

ARGUMENT .................................................................................................................................. 6

    I.    The Corps' Failure to Immediately Supplement its 2007 SEIS Regarding Harmful
        Algal Blooms Violates NEPA and the APA ................................................................. 7

        A.    The Corps Did Not Examine Whether LORS Would Influence HABs in Its 2007
            SEIS and Information Available to the Corps Since that Time Indicates That
            Significant Adverse Impacts Are Occurring ..................................................... 8

        B.    The Corps Failed to Consider the Significant New Circumstances and Information
            Regarding the Environmental Impacts of Operating under LORS Beyond 2010. ..... 17

        C.    No Other Action the Corps Has Taken Relieves the Corps of Its NEPA Obligations
            to Supplement LORS ................................................................................... 18

    II.    Conservation Organizations Have Standing.................................................................. 19

    III.    This Court May Exercise Its Discretion in Tailoring Conservation Organizations'
        Requested Relief........................................................................................................... 19

CONCLUSION ............................................................................................................................. 20

## **TABLE OF AUTHORITIES**

### **Cases**

*AquAlliance v. United States Bureau of Reclamation,*
 287 F. Supp. 3d 969 (E.D. Cal. 2018) ................................................... 16

*Balt. Gas & Elec. Co. v. Natural Res. Def. Council,*
 462 U.S. 87 (1983) ........................................................................ 2

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs,*
 781 F.3d 1271 (11th Cir. 2015) ......................................................... 20

*Ctr. for Biological Diversity v. Bureau of Land Mgmt.,*
 937 F. Supp. 2d 1140 (N.D. Cal. 2013) ................................................. 8

*Defs. of Wildlife v. Bureau of Ocean Energy Mgmt., Regulation, & Enf't.,*
 791 F. Supp 2d 1158 (S.D. Ala. 2011) .................................................. 15

*Defs. of Wildlife v. Salazar,*
 877 F. Supp. 2d 1271 (M.D. Fla. 2012) ................................................. 20

*Envtl. Def. Fund v. Marsh,*
 651 F.2d 983 (5th Cir. 1981) ........................................................... 20

*Fed. Power Comm'n v. Idaho Power Co.,*
 344 U.S. 17 (1952) ....................................................................... 20

*Friends of the Clearwater v. Dombeck,*
 222 F.3d 552 (9th Cir. 2000) ........................................................... 15

*Idaho Sporting Cong., Inc. v. Alexander,*
 222 F.3d 562 (9th Cir. 2000) ........................................................ 3, 19

*Int'l Union v. Brock,*
 477 U.S. 274 (1986) ..................................................................... 19

*Kern v. BLM,*
 284 F.3d 1062 (9th Cir. 2002) ........................................................... 3

*Klamath Siskiyou Wildlands Ctr. v. Boody,*
 468 F.3d 549 (9th Cir. 2006) ........................................................... 10

*Lemon v. McHugh,*
 668 F. Supp. 2d 133 (D.D.C. 2009) ...................................................... 8

*Lujan v. Defs. of Wildlife,*
 504 U.S. 555 (1992) ..................................................................... 19

*Marsh v. Or. Nat. Res. Council,*
 490 U.S. 360 (1989) ........................................................... 7, 9, 10, 18

*Miccosukee Tribe of Indians of Florida v. United States,*
 No. 08-21747-CIV-UNGARO, 2008 WL 11332080 (S.D. Fla. Nov. 14, 2008) ................. 18

*Miccosukee Tribe of Indians v. United States,*
 420 F. Supp. 2d 1324 (S.D. Fla. 2006) ........................................................ 17, 20

*Miccosukee Tribe of Indians v. United States,*
 566 F.3d 1257 (11th Cir. 2009) ...................................................................... 16

*Motor Vehicle Mfr. Ass'n. v. State Farm Mut. Auto. Ins. Co.,*
 463 U.S. 29 (1983) .......................................................................................... 16

*N.M. ex rel. Richardson v. BLM,*
 565 F.3d 683 (10th Cir. 2009) .......................................................................... 3

*Nat'l Parks Conservation Ass'n v. Babbitt,*
 241 F.3d 722 (9th Cir. 2001) ........................................................................... 14

*Nat'l Parks Conservation Ass'n v. Semonite,*
 916 F.3d 1075 (D.C. Cir. 2019) ....................................................................... 14

*Norton v. S. Utah Wilderness All.,*
 542 U.S. 55 (2004) ............................................................................................ 7

*Ouachita Watch League v. Jacobs,*
 463 F. 3d 1163 (11th Cir. 2006) ..................................................................... 19

*Pac. Coast Fed'n of Fishermen's Ass'n v. Gutierrez,*
 606 F. Supp. 2d 1122 (E.D. Cal. 2008) .......................................................... 17

*Piedmont Envtl. Council v. United States DOT,*
 159 F. Supp. 2d 260 (W.D. Va. 2001) .............................................................. 3

*Robertson v. Methow Valley Citizen Council,*
 490 U.S. 332 (1989) .......................................................................................... 2

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.,*
 723 F. Supp. 2d 1247 (E.D. Cal. 2010) .......................................................... 17

*Sierra Club v. Flowers,*
 526 F.3d 1353 (11th Cir. 2008) ...................................................................... 20

*Sierra Club v. U.S. Army Corps of Eng'rs,*
 295 F.3d 1209 (11th Cir. 2002) ........................................................................ 8

*Wild Fish Conservancy v. Irving,*
 221 F. Supp. 3d 1224 (E.D. Wash. 2016) ...................................................... 16

*Wilderness Watch v. Mainella,*
 375 F.3d 1085 (11th Cir. 2004) ...................................................................... 20

*Wyoming v. USDA,*
 661 F.3d 1209 (10th Cir. 2011) ...................................................................... 15

**Statutes**

5 U.S.C. § 551(13) ............................................................................................... 4

5 U.S.C. § 704 ...................................................................................................... 4

5 U.S.C. § 706(1) ................................................................................................. 4

5 U.S.C. § 706(2)(A) ............................................................................................ 4

5 U.S.C. § 706(2)(D) ............................................................................................ 4

42 U.S.C. § 4321 .................................................................................................. 2

42 U.S.C. § 4332(2)(C) ..................................................................................... 2, 3

**Legislative Materials**

S. Doc. No. 248, 79th Cong., 2d Sess. (1946) ..................................................... 4

**Administrative and Executive Materials**

33 C.F.R. § 230.1 ................................................................................................. 8

40 C.F.R. § 1500.1(a) .......................................................................................... 2

40 C.F.R. § 1500.1(b) .......................................................................................... 3

40 C.F.R. § 1502.16 ............................................................................................. 3

40 C.F.R. § 1502.22 ............................................................................................. 3

40 C.F.R. § 1502.9(c) ......................................................................................... 18

40 C.F.R. § 1502.9(c)(1) ...................................................................................... 8

40 C.F.R. § 1502.9(c)(1)(i) .................................................................................. 3

40 C.F.R. § 1502.9(c)(1)(ii) ............................................................................. 3, 13

40 C.F.R. § 1508.14 ............................................................................................. 2

40 C.F.R. § 1508.27 ............................................................................................. 8

40 C.F.R. § 1508.27(b) ....................................................................................... 10

40 C.F.R. § 1508.27(b)(2) ............................................................................... 8, 13

40 C.F.R. § 1508.27(b)(3) ............................................................................... 8, 13

40 C.F.R. § 1508.27(b)(4) ............................................................................... 8, 13

40 C.F.R. § 1508.27(b)(5) ................................................................................... 13

40 C.F.R. § 1508.27(b)(7) ................................................................................... 16

40 C.F.R. § 1508.27(b)(9) ............................................................................... 8, 15

40 C.F.R. § 1508.7 ............................................................................................... 3

40 C.F.R. § 1508.8 ............................................................................................... 3

40 C.F.R. § 1508.8(b) ........................................................................................ 3

40 C.F.R. §§ 1508.27(b)(4) ............................................................................. 14

40 C.F.R. §§ 1508.27(b)(5) ............................................................................. 14

Forty Most Asked Questions Concerning CEQ's National Environmental Policy Act
   Regulations, 46 Fed. Reg. 18,026 (March 23, 1981) ........................................... 7, 18

## **TABLE OF ADMINISTRATIVE RECORD CITATIONS**

| Agency Document | AR Document Number | Bates Page Number(s) | Motion Page Number(s) |
|---|---|---|---|
| 19990323 Fed Reg Vol 64 No. 55 NOAA - Hawksbill and Leatherback Sea Turtle Final Designation | USACE Doc. No. 3 | 000011-000037 | 15 |
| 19990701 Trainer and Baden 1999_High affinity binding of red tide neurotoxins to marine mammal brain | USACE Doc. No. 4 | 000038-000047 | 15 |
| 19990702 Trainer, High Affinity binding of red tide neurotoxins to marine mammal brain | USACE Doc. No. 5 | 000048-000057 | 15 |
| 20000405 Fed Reg Vol 65 No. 66 - NOAA NMFS-Johnson's Seagrass Final Designation | USACE Doc. No. 6 | 000058-000076 | 15 |
| 20000900 Anderson, Estimated Annual Economic Impacts from Harmful Algal Blooms (HABs) in the United States | USACE Doc. No. 7 | 000077-000172 | 15 |
| 20020200 Kirkpatrick 2002_Florida Red Tides Manatee brevetoxicosis and lung models | USACE Doc. No. 12 | 000265-000273 | 15 |
| 20050609 Flewelling 2005_marinemammals_redtide | USACE Doc. No. 23 | 000372-000377 | 15 |
| 20071015 FWS Biological Opinion to USACE - LORS ESA Consultation | USACE Doc. No. 64 | 000930-001009 | 15 |
| 20071100 USACE Final 1stSUPPlemental Environmental Impact Statement RE LORS | USACE Doc. No. 65 | 001010-001830 | 1, 2, 4, 5, 7, 8, 9, 10, 11, 15, 16, 17, 18 |
| 20080300 Backer et al 2008 Recreational exposure | USACE Doc. No. 68 | 002443-002460 | 13 |
| 20080500 Paerl, Blooms like it hot | USACE Doc. No. 71 | 002574-002576 | 13, 23 |
| 20080704 CDC, Illness Associated with Red Tide_Nassau County, Florida 2007 | USACE Doc. No. 72 | 002577-002581 | 13 |
| 20080712 Watkins 2008_neurotoxic_shellfish_poisoning | USACE Doc. No. 73 | 002582-002606 | 13 |
| 20081000 Pierce, Harmful algal toxins of the Florida red tide (karenia brevis), natural chemical stressors | USACE Doc. No. 74 | 002607-002622 | 13 |
| 20081107 Erdner, Centers for Oceans and Human Health- A unified approach to the challenge of harmful algal blooms | USACE Doc. No. 75 | 002623-002639 | 13 |
| 20081201 Anderson, Harmful algal blooms and eutrophication, Examining linkages | USACE Doc. No. 77 | 002659-002689 | 13 |
| 20081216 Olascoaga,MJ_Tracing the early development of harmful algal blooms on the West Florida shelf | USACE Doc. No. 78 | 002690-002699 | 13 |
| 20090000 Backer, Impacts of Florida red tides on coastal communities | USACE Doc. No. 79 | 002700-002704 | 13 |
| 20090000 Landsberg, Karenia brevis red tides, brevetoxins in the food web and impacts on natural resources | USACE Doc. No. 80 | 002705-002714 | 13, 22 |

| | | | |
|---|---|---|---|
| 20090000 Metcalf, Cyanobacteria, neurotoxins and water resources-are there implications for human neurodegenerative disease | USACE Doc. No. 81 | 002715-002720 | 8, 13, 18 |
| 20090000 Pablo, Cyanobacterial nerotoxin BMAA in ALS and Alzheimer's disease | USACE Doc. No. 82 | 002721-002731 | 13 |
| 20090100 Butler et al. California EPA - Microcystins a brief overview of their toxicity | USACE Doc. No. 84 | 002834-002854 | 13, 22 |
| 20090109 Walsh, Isotopic evidence for dead fish maintenance of florida red tides | USACE Doc. No. 85 | 002855-002877 | 13 |
| 20090200 Paerl, Climate Change- A catalyst for global expansion of harmful cyanobacterial blooms | USACE Doc. No. 86 | 002878-002889 | 13, 23 |
| 20090318 _Gilbert,P_Grazing by Karenia brevis on Synechococcus enhances its growth rate and may help sustain booms | USACE Doc. No. 87 | 002890-002904 | 13 |
| 20090800 Hoagland, The Costs of Respiratory Illnesses Arising from Florida Gulf Coast Karenia brevis blooms | USACE Doc. No. 89 | 002914-002918 | 13 |
| 20091125 Brand, LR 2009. Human exposure to cyanobacteria and BMAA | USACE Doc. No. 94 | 003004-003015 | 13 |
| 20091206 Lehman_InitialImpactsOfMicrocystisAer | USACE Doc. No. 95 | 003016-003035 | 13 |
| 20091212 Walsh, Effects of brevetoxin exposure on the immune system of loggerhead sea turtles | USACE Doc. No. 96 | 003036-003046 | 13 |
| 20100201 Kirkpatrick, Inland Transport of Aerosolized Florida Red Tide Toxins | USACE Doc. No. 102 | 003082-003092 | 13 |
| 20100510 Walsh 2010_effects of brevetoxin exposure on the immune system of loggerheads | USACE Doc. No. 112 | 003126-003136 | 13 |
| 20100725 Biefang, Prominent Human Health Impacts from Several Marine Microbes_History, Ecology, and Public Health Implications | USACE Doc. No. 132 | 003306-003321 | 8, 13, 18, 21, 22 |
| 20100901 Brand et al_Cyanobacterial_blooms_and_the_occurrence of the neurotoxin BMAA in SFL aquatic food webs | USACE Doc. No. 139 | 003334-003349 | 13, 21, 22 |
| 20100901 Nierenberg, Florida Red Tide Perception-Residents versus tourists | USACE Doc. No. 140 | 003350-003366 | 13 |
| 20101000 - 57_DOI FWS - JN Ding Darling National Wildlife Refuge_2010 Comp Conservation Plan | USACE Doc. No. 143 | 003370-003760 | 13, 20, 22 |
| 20101203_Olascoaga,MJ_Isolation on the West FL shelf with implications for red tides and pollutant dispersal in the Gulf of Mexico | USACE Doc. No. 146 | 003813-003824 | 13 |
| 20101220 Banack, The Cyanobacteria Derived Toxin BetaNMethylaminoLAlanine and Amyotrophic Lateral Sclerosis | USACE Doc. No. 147 | 003825-003838 | 8, 13, 18, 21 |
| 20110000 Pierce, Compositional changes in neruotoxins and their oxidative derivatives from the dinoflagellate, karenia brevis, i | USACE Doc. No. 148 | 003839-003844 | 13 |
| 20110101 Fleming, Review of Florida Red Tide and Human Health Effects | USACE Doc. No. 149 | 003845-003865 | 6, 13, 15 |

| | | | |
|---|---|---|---|
| 20110101 Kirkpatrick, Aerosolized Red Tide Toxins (brevetoxins) and asthma-continued health effects after 1 hour beach exposure | USACE Doc. No. 150 | 003866-003879 | 13 |
| 20110310 Twiner et al_2011_concurrent exposure of bottlenose_dolphins to multiple algal toxins in Sarasota Bay FL | USACE Doc. No. 162 | 003966-003980 | 6 |
| 20110620 Moss, Allied Attack-Climate Change and Eutrophication | USACE Doc. No. 172 | 003999-004003 | 6 |
| 20110628 Errera, Osmostic Stress triggers toxin production by the dinoflagellate karenia brevis | USACE Doc. No. 173 | 004004-004011 | 6 |
| 20110628_Errera,R_and L_Campbell_Osmotic stress triggers toxin production by the dinoflagellate Karenia brevis | USACE Doc. No. 174 | 004012-004018 | 6 |
| 20110705 Morey,J_ Transcriptomic response of the red tide dinoflagellate, Karenia brevis , to nitrogen and phosphorus depletion and addition _ BMC Genomics   Full Text | USACE Doc. No. 175 | 004019-004072 | 6 |
| 20110921 Phlips, Climatic Influences on Autochthonous and Allochthonous Phytoplankton Blooms in a Subtropical Estuary | USACE Doc. No. 177 | 004086-004106 | 6 |
| 20111123 Rzymski et al. 2011 Gastroenteritis and liver carcinogenesis induced by cyanobacterial toxins | USACE Doc. No. 179 | 004124-004127 | 6, 15 |
| 20120115 Echevarria 2012_effects of karenia brevis on clearance rates and bioaccumulation of brevetoxins | USACE Doc. No. 181 | 004389-004398 | 6, 15 |
| 20120301 Holtcamp, The emerging science of BMAA | USACE Doc. No. 184 | 004471-004477 | 1, 6, 11, 14, 15 |
| 20120815 Twiner et al_2012_Comparative analysis of three brevetoxin-associated bottlenose_dolphin mortality events in the FL panhandle region | USACE Doc. No. 187 | 004505-004523 | 6, 15 |
| 20130000_Garrett_etal_Red Tides on the West Florida Shelf brochure | USACE Doc. No. 189 | 004537-004538 | 6 |
| 20130100 Havens, K, Deep Problems in Shallow lakes, Why Controlling Phosphorus Inputs May Not Restore Water Quality | USACE Doc. No. 190 | 004539-004542 | 6 |
| 20130200 Wiedenmann et al. 2013 Nutrient enrichment can increase the susceptibility of reef corals to bleaching | USACE Doc. No. 193 | 004587-004591 | 6, 16 |
| 20131000 Castle 2013_Coyotes_Dogs_RedTide | USACE Doc. No. 197 | 004626-004627 | 6 |
| 20131023 Zanchett, Cyanobacteria and Cyanotoxins_From Impacts on Aquatic Ecosystems and Human Health to Anticarcinogenic | USACE Doc. No. 198 | 004628-004649 | 1, 6, 11, 14, 16 |
| 20131125 Walker and Gilliam 2013 Determining the Extent and Characterizing Coral Reef Habitats of the N | USACE Doc. No. 199 | 004650-004665 | 6, 13 |
| 20131229 D'Angelo and Wiedenmann 2014 Impacts of nutrient enrichment on coral reefs | USACE Doc. No. 200 | 004666-004677 | 6 |
| 20140000 Index Map of Critical Habitat Units for the Northwest Atlantic Ocean Loggerhead Sea Turtle DPS | USACE Doc. No. 201 | 004678-004678 | 6 |

| | | | |
|---|---|---|---|
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-NC-[01,02,03,04] | USACE Doc. No. 202 | 004679-004679 | 6 |
| 20140000 Houck article_2014_04_44.10426 | USACE Doc. No. 203 | 004680-004696 | 6 |
| 20140000 Index Map of Northern Gulf of Mexico Recovery Critical Habitat Units for the Northwest Atlantic Ocean Loggerhead Sea Turtle DPS | USACE Doc. No. 204 | 004697-004697 | 6 |
| 20140000 Index Map of Peninsula Florida Recovery Critical Habitat Units for the Northwest Atl | USACE Doc. No. 205 | 004698-004698 | 6 |
| 20140000 Index Map of the Dry Tortugas Recovery Critical Habitat Units for the Northwest Atla | USACE Doc. No. 206 | 004699-004699 | 6 |
| 20140000 Index Map of the Northern Recovery Critical Habitat Units for the Northwest Atlantic | USACE Doc. No. 207 | 004700-004700 | 6 |
| 20140000 Killberg-Thoreson, Nutrients released from decaying fish support microbial growth in | USACE Doc. No. 208 | 004701-004710 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-AL-[01,02,03] | USACE Doc. No. 209 | 004711-004711 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-FL-[01,02,03] | USACE Doc. No. 210 | 004712-004712 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-FL-[04,05] | USACE Doc. No. 211 | 004713-004713 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-FL-[06,07,08] | USACE Doc. No. 212 | 004714-004714 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-FL-[09,10,11,12,13,14] | USACE Doc. No. 213 | 004715-004715 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-FL-[15] | USACE Doc. No. 214 | 004716-004716 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-FL-[16] | USACE Doc. No. 215 | 004717-004717 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-FL-[17,18,19,20] | USACE Doc. No. 216 | 004718-004718 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-FL-[21,22,23,24] | USACE Doc. No. 217 | 004719-004719 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-FL-[25,26,27,28] | USACE Doc. No. 218 | 004720-004720 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-FL-[29,30] | USACE Doc. No. 219 | 004721-004721 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-FL-[31,32,33] | USACE Doc. No. 220 | 004722-004722 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-FL-[34,35] | USACE Doc. No. 221 | 004723-004723 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-FL-[36,37] | USACE Doc. No. 222 | 004724-004724 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-FL-[38] | USACE Doc. No. 223 | 004725-004725 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-FL-[39,40,41] | USACE Doc. No. 224 | 004726-004726 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-FL-[42,43,44,45] | USACE Doc. No. 225 | 004727-004727 | 6 |

| | | | |
|---|---|---|---|
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-GA-[01,02,03,04] | USACE Doc. No. 226 | 004728-004728 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-GA-[05,06] | USACE Doc. No. 227 | 004729-004729 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-GA-[07,08] | USACE Doc. No. 228 | 004730-004730 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-MS-[01,02] | USACE Doc. No. 229 | 004731-004731 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-NC-[05,06,07,08] | USACE Doc. No. 230 | 004732-004732 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-SC-[01,02,03,04,05] | USACE Doc. No. 231 | 004733-004733 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-SC-[06,07,08] | USACE Doc. No. 232 | 004734-004734 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-SC-[09,10,11] | USACE Doc. No. 233 | 004735-004735 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-SC-[12,13,14,15,16] | USACE Doc. No. 234 | 004736-004736 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-SC-[17,18,19] | USACE Doc. No. 235 | 004737-004737 | 6 |
| 20140000 Loggerhead Sea Turtle Critical Habitat Map Units LOGG-T-SC-[20,21,22] | USACE Doc. No. 236 | 004738-004738 | 6 |
| 20140000 Mulholland Contribution | USACE Doc. No. 237 | 004739-004748 | 6 |
| 20140330 Cessa, Beaches Erosion Management Practices and Enviromental Implications | USACE Doc. No. 239 | 004875-004875 | 6 |
| 20140617 Poulson-Ellestad,K_Metabolics and proteomics reveal impacts of chemically mediated competition on marine plankton | USACE Doc. No. 241 | 004878-004884 | 6 |
| 20141000 Rolton 2014_effects of red tide on early development of the eastern oysters_redtide | USACE Doc. No. 255 | 005310-005318 | 6 |
| 20150300 Graham Options to Reduce High Volume Freshweater Flows to the St Lucie and Caloosahatchee Estuaries and Move More Water from Lake Okeechobee to the Southern Everglades | USACE Doc. No. 277 | 005418-005560 | 6 |
| 20150400 Walsh et al 2015_sublethal red tide toxin exposure in free-ranging manatees_redtide | USACE Doc. No. 282 | 005581-005592 | 6 |
| 20150600 Havens, Climate Change and hte Occurence of Harmful Microorganisms in Floridas ocean and coastal waters | USACE Doc. No. 299 | 005664-005669 | 16 |
| 20150600 Rolton 2015_susceptibility of oyster_gametes_to karenia brevis and its toxins | USACE Doc. No. 301 | 005675-005684 | 6 |
| 20150603 Weekly Report 3 June 2015 PDE input | USACE Doc. No. 302 | 005685-005689 | 6 |
| 20150610 Weekly Report 10 June 2015 PDE input | USACE Doc. No. 303 | 005690-005694 | 6 |
| 20150824 Indeck, A severe red tide (Tampa Bay, 2005) causes an anomalous decrease in biological sound | USACE Doc. No. 315 | 005768-005773 | 6 |

| | | | |
|---|---|---|---|
| 20151014 Havens, Climate Change at a crossroad for control of harmful algal blooms | USACE Doc. No. 329 | 005884-005885 | 6, 16 |
| 20151101 Wells, Harmful algal blooms and climate change- learning from the past and present to forecast the future | USACE Doc. No. 333 | 005898-005956 | 6 |
| 20160000_NAS_Progress Towards Restoring the Everglades - The Sixth Biennial Review | USACE Doc. No. 347 | 006091-006308 | 6, 9 |
| 20160131_USACE_internal_RE_ Brain-tangling algae lurks in Florida waters (photo of green algae) Conversation with Fl Dept of Health Staffer regarding latest study on BMAA (algal toxin | USACE Doc. No. 355 | 006343-006346 | 15 |
| 20160211_USACE_Internal_Red Tide Update FWC | USACE Doc. No. 360 | 006361-006363 | 6 |
| 20160700 Havens, Natural Climate Variability Can Influence Cyanobacteria Blooms in Florida Lakes and Reservoirs | USACE Doc. No. 391 | 007300-007306 | 6 |
| 20160700 Rolton 2016_effects of field and lab exposure to karenia brevis on easternoyster_offspring | USACE Doc. No. 392 | 007307-007321 | 6 |
| 20170000 Rosen, Cyanobacteria of the 2016 Lake Okeechobee and Okeechobee Waterway Harmful Algal bloom | USACE Doc. No. 412 | 007764-007807 | 6 |
| 20170000_Rosen,B_ Cyanobacteria of the 2016 Lake Okeechobee and Okeechobee Waterway Harmful Algal Bloom Open | USACE Doc. No. 413 | 007808-007851 | 6 |
| 20180000 FWC, 2018Preliminary Red Tide Manatee Mortalities, Jan01-Dec31 Manatees Carcasses Collected within | USACE Doc. No. 432 | 008125-008131 | 14, 15 |
| 20180000 Metcalf, Public health responses to toxic cyanobacterial blooms | USACE Doc. No. 435 | 008136-008149 | 6, 12, 14 |
| 20180000 Rosen, Underdstanding th effect of salinity tolerance on cyanobacteria associated with harmful algal bloom in Lake O | USACE Doc. No. 436 | 008150-008193 | 6 |
| 20180000 Zhang J, Chapter 8B Lake Okeechobee Watershed Reseasrch and Water Quality Monitoring SFER vol1 | USACE Doc. No. 437 | 008194-008296 | 1, 5, 6, 11, 12 |
| 20180200 Havens, The Future of Harmful Algal Blooms in Florida Inland and Coastal Waters | USACE Doc. No. 441 | 008569-008572 | 6, 16 |
| 20180300 Central Everglades Planning Project Post Authorization Change Report, Fe... | USACE Doc. No. 442 | 008573-008905 | 6 |
| 20180600 Gravinese 2018_effects of redtide_on StoneCrabs | USACE Doc. No. 445 | 009172-009175 | 15 |
| 20180810 Havens,K_ What is causing Florida's algae crisis_5 questions answered | USACE Doc. No. 450 | 009348-009353 | 6 |
| 20180810 Wright Floridas BlueGreen Algae Bloom 10 times too toxic to touch, testing shows | USACE Doc. No. 451 | 009354-009364 | 6, 10, 12 |
| 20180927 _ Internal Email Red Tide Link to Lake O discharges | USACE Doc. No. 453 | 009367-009367 | 1, 14 |
| 20181011 Munoz, Scientists- Lake Okeechobee may enhance red tide | USACE Doc. No. 454 | 009368-009369 | 6 |

| 20181026 MFR - LORS AOF Justification and NEPA Coverage Determination | USACE Doc. No. 456 | 009377-009385 | 9 |
|---|---|---|---|
| 20181127_Williams,A_Algae toxins are airbone and can reach deep into human lungs, FGCU research shows_2018 | USACE Doc. No. 457 | 009386-009388 | 1, 6, 11 |
| 20190320 Davis 2019_dolphin brain_cyanobacteria_BMAA | USACE Doc. No. 470 | 009482-009499 | 6, 12 |
| 20190322 Email from USACE to FWS Reinitiation of Informal ESA on LORS att 7a7d | USACE Doc. No. 478 | 009908-009918 | 18 |
| 20190806 Draft EA 2019 Planned Deviation to LORS | USACE Doc. No. 493 | 010148-010275 | 1, 5, 6, 9, 10, 11, 13, 18 |
| 20160421 Backer 2016 Sentinel Animals in a One Health Approach to Harmful Cyanobacterial and Algal Blooms | USACE Supp. 1 Doc. No. 54 | 012787-012804 | 14 |
| 20170400 FTW 2017 Florida Tax Watch The Cost of Inaction on the Florida Everglades & Lake Okeechobee Water Crisis | USACE Supp. 1 Doc. No. 60 | 012902-012918 | 1, 5, 6, 11 |
| 20180705 Corps letter to Mast 2018_07_05 | USACE Supp. 1 Doc. No. 64 | 012976-012987 | 1, 5, 6 |
| 20180709 Krimsky 2018 A Response to FAQs about the 2018 Lake Okeechobee, Caloosahatchee and St. Lucie Rivers and Estuaries Algal Blooms | USACE Supp. 1 Doc. No. 65 | 012988-012995 | 1, 6 |
| 20180918 Goforth 2018 A brief discussion of Lake Okeechobee Pollution - Draft Subject to Revision | USACE Supp. 1 Doc. No. 67 | 013013-013033 | 6 |
| 20181004_SFWMD_Water flow and nutrient loads | USACE Supp. 1 Doc. No. 68 | 013034-013050 | 6 |
| 20181005 Murphy 2018(a) Red tide just spread to Florida's atlantic coast, choking some the most popular beaches CNN | USACE Supp. 1 Doc. No. 69 | 013051-013054 | 6 |
| 20181008 Jones 2018 Could toxic red tide move farther north to St Johns County - The St. Augustine Record | USACE Supp. 1 Doc. No. 70 | 013055-013056 | 6 |
| 20181015 Williams 2018(a) Researchers in town testing residents for exposure to algae toxins, Fort Myers News-press | USACE Supp. 1 Doc. No. 71 | 013057-013059 | 6, 12 |
| 20181017 FWC 2018_10_18 Email from FWC RE Sea Turtle Strandings and Red Tide | USACE Supp. 1 Doc. No. 72 | 013060-013062 | 6 |
| 20181018 Murphy 2018 Red tide is spreading in Florida CNN | USACE Supp. 1 Doc. No. 73 | 013063-013065 | 15 |
| 20181029 Hagan 2018 Red tide has contributed to the deaths of nearly 190 Florida manatees, FWC says ABCActionNews | USACE Supp. 1 Doc. No. 74 | 013066-013067 | 15 |
| 20181029 SCCF 2018_10_30 memo to Corps PSC Caloosahatchee & Estuary Condition Report | USACE Supp. 1 Doc. No. 75 | 013068-013070 | 6 |
| 20181101 Ballogg 2018 Red Tide Remains Strong off Anna Maria Island - Bradenton Herald | USACE Supp. 1 Doc. No. 76 | 013071-013073 | 6 |
| 20181101 Keieki 2018 Red tide update for Northwest Florida WPMI NBC15 | USACE Supp. 1 Doc. No. 77 | 013074-013076 | 6 |

| | | | |
|---|---|---|---|
| 20181108 Treadway 2018 EAA reservoir Water District board OKs leasing project's lands to sugar grower, Treasure Coast Newspapers | USACE Supp. 1 Doc. No. 78 | 013077-013079 | 6 |
| 20181109 FWC 2018_11_09 Email from FWC RE Sea Turtle Strandings and Red Tide | USACE Supp. 1 Doc. No. 79 | 013080-013083 | 6 |
| 20181203 SCCF 2018_12_04 memo to Corps PSC Caloosahatchee & Estuary Condition Report | USACE Supp. 1 Doc. No. 81 | 013090-013092 | 15 |
| 20181207 NOAA 2018 Bottlenose dolphin unusual mortality event southwest Florida | USACE Supp. 1 Doc. No. 82 | 013093-013098 | 6, 15 |
| 20181212 FWC 2018a Preliminary Red Tide Manatee Mortalities | USACE Supp. 1 Doc. No. 83 | 013099-013103 | 15 |
| 20181213 FWC 2018_12_10 Email from FWC RE Sea Turtle Strandings and Red Tide | USACE Supp. 1 Doc. No. 84 | 013104-013107 | |
| 20190320_Weisberg_Red Tide event 2018 Univ of South Florida paper | USACE Supp. 1 Doc. No. 97 | 013229-013240 | 6 |
| 20190000_ORCA_Exposure to Toxic algal blooms | USACE Supp. 2 Doc No. 10 | 014166-014171 | |
| 20190720_Chernoff - Lack of evidence for a role of BMAA | USACE Supp. 2 Doc No. 14 | 014328-014329 | 6 |
| 0160627_Preece_a review of microcystin detection in Esturine and Marine waters | USACE Supp. 2 Doc No. 6 | 013968-013982 | 6 |
| 20170000_Chernoff_critical review of postulated role of BMAA in neurodegenerative diseases in humans | USACE Supp. 2 Doc No. 7 | 013983-014046 | 6 |
| 20190000 2019 South Florida Environmental Report Chapter 8-C - St. Lucie and Caloosahatchee River Watersheds Annual Report | USACE Supp. 2 Doc No. 9 | 014122-014165 | 1, 6, 9 |
| 20190129_Corps Invites Input on LOSOM | USACE Supp. 3 Doc No. 1009 | 025285-025287 | 5 |
| 20190208 Gov-Desantis, Letter to USACE-Kelly Re Lake O | USACE Supp. 3 Doc No. 1018 | 025379-025379 | 1, 10 |
| 20190212 Gov-DeSantis, Letter to USACE-Spellmon Re Lake O | USACE Supp. 3 Doc No. 1023 | 025414-025414 | 1, 10 |
| 20190705_CDC_General_Information_HAB_Associated_Illness | USACE Supp. 3 Doc No. 1124 | 026550-26555 | 1, 11 |
| 20191100 Lake Okeechobee System Operating Manual (LOSOM) Fact Sheet | USACE Supp. 3 Doc No. 2227 | 028869-028870 | 7 |
| 20171115_MFR_LORS_Operational_Flexibility_NEPA_Coverage_Determination | USACE Supp. 3 Doc No. 809 | 023366-023377 | 9 |
| 20171212_CDC_HAB_Associated_Illness | USACE Supp. 3 Doc No. 821 | 023501-023502 | 16 |
| 20200312 News Release USACE continues work on LORS deviation, Jacksonville District | USACE Supp. 4 Doc No. 2308 | 030236-030238 | 6 |
| Lake Okeechobee Regulation Schedule biological opinion | FWS Doc. No 171 | 0116340-0116502 | 8, 15 |

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs Center for Biological Diversity, Calusa Waterkeeper, and Waterkeeper Alliance (collectively, Conservation Organizations) submit this motion for partial summary judgment on Count 1 of their complaint, ECF No. 1, regarding the U.S. Army Corps of Engineers' failure to supplement its 2007 National Environmental Policy Act (NEPA) analysis on the Lake Okeechobee Regulation Schedule (LORS). As explained in the memorandum in support of this motion, Defendants U.S. Army Corps of Engineers and Colonel Andrew Kelly, in his official capacity, (collectively, Corps) are violating NEPA and the Administrative Procedure Act (APA) in failing to supplement the Corps' environmental analysis of LORS with significant new information regarding LORS' influence on harmful algal blooms (HABs)[2] and, in turn, HABs' significant impacts to the human environment. Conservation Organizations request the Court declare that the Corps is violating NEPA in failing to supplement its 2007 environmental analysis of LORS and that the Court order the Corps to immediately supplement its environmental analysis by a date certain.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## INTRODUCTION

Under LORS, the Corps discharges large volumes of polluted freshwater from Lake Okeechobee (Lake) to the Caloosahatchee and St. Lucie rivers and estuaries. AR_012978-79; AR_008196; AR_012881; AR_012988; AR_010160; AR_014122-23; AR_004471-77; AR_003825-38; AR_003308-09. These discharges contain toxic algae that kill fish and wildlife, harm people and their pets, and inflict economic damage to local communities.[3] In recent years, these discharges have coincided with red tide along Florida's west coast. AR_013063–65.

The Corps' past environmental analyses of LORS under NEPA discounted the effects of HABs, did not consider the long-term impacts of high-volume discharges beyond three years,

---

[2] The Centers for Disease Control describes HABs as "the rapid growth, or bloom, of algae" including red tide and cyanobacteria "that can cause harm to animals, people, or the local environment." AR_026550-51.

[3] *See* AR_011605; AR_003825-38; AR_010160; AR_025414; AR_025379; AR_009386-88; AR_002715-20; AR_004629; AR_026551-52; AR_013057-59; AR_004635-36; AR_004628-43; AR_0014166-71, AR_009367.

and entirely failed to consider how climate change may affect LORS and HABs. AR_001141-42; AR_001338-41. Despite significant new circumstances and information that relate to the environment, which include the long-term implementation of LORS and HABs, the Corps has failed to supplement its 13-year-old environmental impact statement to analyze these impacts and consider less environmentally harmful alternatives. Due to the urgency and gravity of HABs in Florida, and the extent of the Corps' delay, Conservation Organizations seek an order from this Court mandating that the Corps immediately supplement its NEPA analysis of LORS.

## LEGAL FRAMEWORK

### I.   The National Environmental Policy Act Requires the Corps to Immediately Supplement Its LORS NEPA Analysis

The National Environmental Policy Act is "our basic national charter for protection of the environment." 40 C.F.R. § 1500.1(a). Congress enacted NEPA with the ambitious objectives of "encourage[ing] productive and enjoyable harmony between man and his environment … promot[ing] efforts which will prevent or eliminate damage to the environment and biosphere and stimulating the health and welfare of man; and enrich[ing] the understanding of the ecological systems and natural resources important to the Nation . . . ." 42 U.S.C. § 4321. "NEPA has twin aims. First, it places upon an agency the obligation to consider every significant aspect of the environmental impact of a proposed action, and to consider reasonable alternatives that could mitigate those impacts. Second, it ensures that the agency will inform the public that it has indeed considered environmental concerns in its decisionmaking process." *Balt. Gas & Elec. Co. v. Natural Res. Def. Council*, 462 U.S. 87, 97 (1983) (citation omitted).

NEPA mandates several "action forcing" procedures – most importantly, the requirement to prepare an environmental impact statement (EIS) on major Federal actions "significantly affecting the quality of the human environment." *Robertson v. Methow Valley Citizen Council*, 490 U.S. 332, 348 (1989); 42 U.S.C. § 4332(2)(C). The term "human environment" is to be interpreted comprehensively to include the natural and physical environment and "the relationship of people with that environment." 40 C.F.R. § 1508.14. The Council on Environmental Quality regulations, which are binding on all federal agencies, explain, "When an environmental impact statement is prepared and economic or social and natural or physical environmental effects are interrelated, then the environmental impact statement will discuss all of these effects on the human environment." *Id.* An EIS must detail "the environmental impact of

2

the proposed action," "any adverse environmental effects which cannot be avoided," and any reasonable alternatives. 42 U.S.C. § 4332(2)(C). It must analyze not only the direct impacts of a proposed action, but also its indirect and cumulative impacts. 40 C.F.R. §§ 1502.16, 1508.7, 1508.8. "Indirect effects" are "caused by the action and are later in time or farther removed in distance, but are still reasonably foreseeable." 40 C.F.R. § 1508.8(b). A cumulative effect is the impact on the environment "which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions." 40 C.F.R. § 1508.7.

"[A]ssessment of a given environmental impact must occur as soon as that impact is 'reasonably foreseeable.'" *N.M. ex rel. Richardson v. BLM*, 565 F.3d 683, 716 (10th Cir. 2009) (citing 40 C.F.R. § 1502.22); *see also Kern v. BLM*, 284 F.3d 1062, 1072 (9th Cir. 2002) ("NEPA is not designed to postpone analysis of an environmental consequence to the last possible moment. Rather, it is designed to require such analysis as soon as it can reasonably be done."). This ensures "environmental information is available to public officials and citizens *before* decisions are made and *before* actions are taken." 40 C.F.R. § 1500.1(b) (emphasis added). Because the information presented "must be of high quality, …[a]ccurate scientific analysis…and public scrutiny are essential to implementing NEPA." *Id.*

The preparation of an EIS does not terminate an agency's duties under NEPA. NEPA requires that an agency "shall" supplement an EIS when the "agency makes substantial changes in the proposed action" *or* "significant new circumstances or information" arise that are relevant to the environmental impacts of the action. 40 C.F.R. § 1502.9(c)(1)(i)-(ii). Underlying all of NEPA's procedural requirements is the mandate that agencies take a 'hard look' at all of the environmental impacts and risks of a proposed action. Agencies may use internal, non-NEPA procedures and documents, such as a supplemental information reports, to determine if new information requires preparation of a supplemental EIS, but such documents may not be used to correct deficiencies in the EIS or "serve as a substitute" for it. *Idaho Sporting Cong., Inc. v. Alexander*, 222 F.3d 562, 566 (9th Cir. 2000); *see also Piedmont Envtl. Council v. United States DOT*, 159 F. Supp. 2d 260, 279-80 (W.D. Va. 2001).

II.   **The Administrative Procedure Act Requires Courts to Hold Unlawful or Set Aside Decisions that are Arbitrary or Capricious and to Compel Agency Action Unreasonably Delayed**

The APA provides for judicial review of "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704. Congress intended the definition of agency action under the APA to be expansive, and includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id*. § 551(13); *see also* S. Doc. No. 248, 79th Cong., 2d Sess. 255 (1946) ("The term 'agency action' brings together previously defined terms in order to simplify the language of the judicial-review provisions . . .and to assure the complete coverage of every form of agency power, proceeding, action, or inaction"). The APA requires that courts "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D). In reviewing a challenge to an agency's failure to act, the APA directs that the court "shall compel agency action unlawfully withheld or unreasonably delayed." *Id*. § 706(1).

## FACTUAL BACKGROUND

The Corps manages Lake Okeechobee's levels based on a schedule. The Corps has changed this schedule several times over the last 50 years. AR_001038-39. In 2000, the Corps approved a new schedule but deviated from it to address wetter than usual conditions. AR_001039. The Corps produced an environmental assessment for those deviations and continued to evaluate a new regulation schedule, ultimately supplementing that environmental analysis (2007 SEIS) and producing LORS – the current schedule. AR_001039-40. Anticipating that LORS would be an interim schedule lasting only three years, the Corps planned to begin its Lake Okeechobee "System Operating Manual Study" in 2008 to replace LORS and bring it online in 2010, which is when the Corps thought the Comprehensive Everglades Restoration Plan (CERP) Band 1 projects and repairs to the Herbert Hoover Dike (HHD) would be completed. AR_001016.

When the Corps analyzed the effects of LORS in its 2007 SEIS, it generically acknowledged that population growth and "other anthropogenic factors have led to significant nutrient enrichment of Florida coastal waters over the past several decades," that "most scientists agree that runoff could help maintain a bloom once it migrates near enough to shore," and that nutrients from a combination of sources like river flow and groundwater "are sufficient to

generate and maintain in-shore blooms." AR_001142. The Corps also noted that sometimes HABs "appear associated with discharges from Lake Okeechobee" and other times they do not, AR_001142, but ultimately concluded "[i]t is unlikely that discharges from Lake Okeechobee are a prerequisite for HAB formation." AR_001142. The Corps did not analyze or even list past HAB events, and offered no further analysis on HABs' impacts to the human environment.

Since 2008, the Corps has managed the Lake's levels pursuant to LORS. AR_008030; ECF No. 21 ¶ 111; ECF No. 21 ¶ 115. Under LORS, the Lake and estuaries have experienced several widespread harmful algae blooms. AR_012978-79; AR_008196; AR_012881; AR_012988. As detailed in Conservation Organizations' earlier briefing and statements of facts, HABs – which include blue-green algae and red tide – significantly impact the human environment. ECF Nos. 41 at 13-14, 17, 19-21, 25-38; 42 ¶¶ 19-37, 40-50, 62-73, 86-91, 108-113; 56 at 8-10; 57 at 2-7. In 2016, a bloom of more than 200-square miles resulted in beach closures throughout Florida and the Governor declared a state of emergency. AR_008196; AR_012881; AR_012894. In 2018, Florida again experienced a massive blue-green algae bloom. AR_012988–90; AR_010159. The Corps initiated multiple discharges of toxic algae-filled water into the estuaries and Florida's Governor once again declared a state of emergency. AR_013063–65; AR_010160. During the 2018 blue-green algae bloom, Florida also suffered a widespread red tide bloom that lingered for nearly a year and displaced and killed thousands of tons of marine wildlife, including species listed under the Endangered Species Act. AR_013063–65; AR_013090–92.

In December 2018, Conservation Organizations notified the Corps, U.S. Fish and Wildlife Service, and National Marine Fisheries Service their intention to file a lawsuit for violations of the Endangered Species Act (ESA). In January 2019, the Corps announced plans to begin a four-year-long NEPA process on the Lake Okeechobee System Operating Manual (LOSOM). AR_025285. In June 2019, Conservation Organizations brought the present action alleging that the Corps violated the Endangered Species Act, and NEPA by failing to supplement its 2007 SEIS. ECF No. 1. In August 2019, the Corps released its draft environmental assessment and draft finding of no significant impact (FONSI) on a planned deviation from LORS to remain in place until LOSOM's anticipated implementation date in December 2022. AR_10148-10257. On March 12, 2020, the Corps announced that it intended to release a revised NEPA document on the planned deviation from LORS "within the coming weeks, with the goal of having the

proposed deviation finalized early in wet season." AR_030236-38. The Corps has not released a revised document or finalized its FONSI on the deviation.

## **ARGUMENT**

For nearly a decade, the Corps has annually discharged billions of gallons of phosphorous, nitrogen, and total suspended solids, as well as tons of harmful algae from the Lake, into the Caloosahatchee and St. Lucie rivers and estuaries under LORS. AR_012978-79; AR_008196; AR_012881; AR_012988; AR_010160; AR_014122-23; AR_004471-77; AR_003825-38; AR_003308-09. These HABs, and the conditions that give rise to them, constitute significant new circumstances or information relevant to environmental concerns that bear on LORS and its impacts on the human environment, public health, and listed species. Additionally, since the Corps last reviewed LORS under NEPA in 2007, there has been an explosion of additional research and information on HABs. For example, in 2010, the Department of Interior and U.S. Fish and Wildlife Service discussed the harmful effects of LORS and HABs on the J.N. Ding Darling National Wildlife Refuge Complex in its 15-year Comprehensive Conservation Plan for the Refuges. AR_003448-50. In 2016, the National Academy of Sciences highlighted the nutrient pollution from Lake Okeechobee that seeds harmful algae blooms in the coastal estuaries. AR_006137-38. That report also identified the potential for climate change to make the HAB situation even worse. *Id.* Also in 2016, Corps staff relayed information from the Florida Fish and Wildlife Conservation Commission Harmful Algal Blooms Lab to Lt. Col. Reynolds that "once red tide is in a nearshore area where basin and Lake flow are bringing in nutrients it can persist longer under the right conditions." AR_006361. There have also been numerous other studies, reports, and additional information about HABs since 2007.[4]

---

[4] *See* AR_002443-60; AR_002574-76; AR_002577-002639; AR_002659-2731; AR_002834-2904; AR_002914-18; AR_003004-003046; AR_003082-92; AR_003126-36; AR_003334-66; AR_003813-79; AR_003952-57; AR_003966-80; AR_003999-4072; AR_004086-4106; AR_004124-27; AR_004389-98; AR_004471-77; AR_004505-23; AR_004537-38; AR_004539-42; AR_004587-94; AR_004615-25; AR_004628-4874; AR_004875; AR_004878-4884; AR_005310-18; AR_005418-5560; AR_005581-92; AR_005675-94; AR_005768-73; AR_005884-85; AR_005898-5956; AR_006091-6308; AR_007300-7321; AR_007764-7851; AR_008136-8296; AR_008569-75; AR_009348-64; AR_009368-69; AR_009386-88; AR_009482-99; AR_013968-4046; AR_014122-4171; AR_014328-29; AR_011325-128901; AR_012988-95; AR_013013-83; AR_013093-107; AR_013229-240.

Furthermore, the Corps originally intended LORS to be an interim measure, active for only three years or until 2010. AR_001275, AR_001285 ("The revised schedule is intended to be active for three years, until around 2010 "); AR_001038 (the Corps' goal with LORS is "to implement a new interim regulation schedule"); AR_001546 (the baseline simulation assumption is that a new LORS "will be initiated with an expected duration of approximately three years, at which time a new regulation schedule is anticipated for operations."); *see also* AR_001040; AR_001364; AR_001406; AR_001425. However, the Corps has continued to manage the Lake under LORS and announced its intention to continue managing the Lake under LORS until at least December 2022. AR_028869. This constitutes significant new information and the Corps must evaluate its effect on the human environment.

Conservation Organizations have already detailed the history of the Corps' management of the Lake under LORS and LORS' contribution to HABs. ECF Nos. 41 at 13-14, 17, 19-21, 25-38; 56 at 8-10. This memorandum details the Corps' duty and failure to supplement the 2007 SEIS and establishes that Conservation Organizations have met their burden to show that the recent HABs are significant new circumstances, there is significant new information on HABs that is relevant to the environmental impacts of LORS, and the Corps has made substantial changes to LORS by relying on it well beyond three years. The Corps has not supplemented the 2007 SEIS and no other planned or proposed actions satisfy this obligation.

## I.   The Corps' Failure to Immediately Supplement its 2007 SEIS Regarding Harmful Algal Blooms Violates NEPA and the APA

The Corps has unlawfully failed to supplement its NEPA analysis of LORS despite significant new circumstances and information regarding its effects on HABs. The Corps has ignored these obligations at the expense of human health and the environment. This violation can only be remedied by the Corps immediately supplementing its 2007 SEIS to reflect the significant new circumstances and information about HABs.

The Supreme Court in *Marsh v. Or. Nat. Res. Council* affirmed that "[i]t would be incongruous with [NEPA's] approach to environmental protection, and with the Act's manifest concern with preventing uninformed action, for the blinders to adverse effects, once unequivocally removed, to be restored prior to the completion of agency action." 490 U.S. 360, 371 (1989). Accordingly, "when the remaining governmental action would be environmentally significant," the duty to supplement applies. *Id*. at 372; *see also* Forty Most Asked Questions Concerning CEQ's National

Environmental Policy Act Regulations, 46 Fed. Reg. 18,026 (March 23, 1981) (Question 32); *See also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 73 (2004) (reaffirming that "supplementation is necessary only if there remains 'major Federal action' to occur.") (internal citation omitted). LORS is an ongoing federal action. AR_116340.

Under NEPA, the Corps must prepare a supplemental EIS if it "makes substantial changes in the proposed action that are relevant to environmental concerns; or [] there are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9(c)(1); 33 C.F.R. § 230.13. Because "[t]he standard for determining when an SEIS is required is 'essentially the same' as the standard for determining when an EIS is required," this Court may look to the factors used to evaluate intensity, part of the consideration for whether an action is environmentally significant enough to warrant NEPA analysis. *Sierra Club v. U.S. Army Corps of Eng'rs*, 295 F.3d 1209, 1215-16 (11th Cir. 2002); 40 C.F.R. § 1508.27. "Significantly," as used in NEPA, requires the Corps to consider "both context and intensity," and "intensity . . . refers to the severity of the impact," which includes the degree to which LORS affects public health and safety, ecologically critical areas, highly controversial and uncertain effects, and listed species or their habitat. 40 C.F.R. §§ 1508.27(b)(2), (3), (4), (9); *Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, 937 F. Supp. 2d 1140, 1155 (N.D. Cal. 2013) ( "[t]he presence of any one of these factors may be sufficient to require an EIS."). The Corps "must 'clearly show' that it took a hard look and the existing EIS already accounts for any purported changes, new circumstances or new information in the new proposed action." *Lemon v. McHugh*, 668 F. Supp. 2d 133, 142 (D.D.C. 2009). To date, the Corps has failed to do this.

### A. The Corps Did Not Examine Whether LORS Would Influence HABs in Its 2007 SEIS and Information Available to the Corps Since that Time Indicates That Significant Adverse Impacts Are Occurring

It is clear from the record the Corps did not anticipate how LORS would influence HABs, and how those HABs would affect the health and safety of the human environment, in its 2007 SEIS. And it is easy to understand how that happened. The Corps had never managed the Lake under the levels called for by LORS,[5] the historic rain record that the Corps based its LORS

---

[5] The Lake was managed at 15.5-17.5 feet 1978-1992. AR_001376. From 1994-2000 the Corps managed the Lake at 15.65-16.75 feet. AR_001039. From 2000-2008 the Corps allowed the Lake to go lower, but still allowed for relatively high levels. AR_001038-39. The Corps manages the Lake 12.5-15.5 feet under LORS. AR_001550.

modeling on did not envisage the very wet 2016 and 2018 seasons,[6] and the Lake and estuaries had never seen HABs like the ones that would come to pass. Instead, the Corps erroneously concluded Lake discharges were "unlikely" to be a precursor to HAB formation and therefore undertook no analysis of whether or how LORS might influence HABs. AR_001141-42; *see also* AR_009377 (the Corps did not evaluate the "frequent climate oscillations, extreme high water, major tropical events, harmful algal blooms, and estuarine salinity issues" from 2018-2019).

It has since become clear that LORS "can transmit blue green algae from Lake Okeechobee to the estuaries," lowering "salinities in the estuary and provide nutrients that promote blue green algae blooms," AR_010159, and that HABs have a significant impact on the quality of the human environment. AR_010160; AR_023371; AR_025384 (the Corps stating "[W]hat we've learned is that there are some things that weren't fully considered when we considered the schedule in 2008"). The Corps is required to supplement its NEPA analysis when something "will 'affect the quality of the human environment' in a significant manner or to a significant extent not already considered." *Marsh*, 490 U.S. at 374. The Corps must consider beneficial and adverse impacts, including effects on public health and safety, ecologically critical areas, controversial and uncertain effects, and impacts on listed species and their habitat. *Id.*

The Corps has released Lake water under LORS since 2008 that is at times polluted with toxic algae and nutrients, causing significant adverse impacts to the Caloosahatchee and St. Lucie. In 2018, over 80% of the Lake was covered in HABs, AR_010160, and during the 2018 water year,[7] the Corps discharged nearly twice as much Lake water into the estuaries than normal – 195 billion gallons to the St. Lucie and 391 billion gallons to the Caloosahatchee. AR_014122-23. This was not only a larger volume of water than usual, but also a larger percentage of water entering the estuaries as compared to other sources, like basin runoff. *Id.* During the same time frame, the Corps discharged twice as much nitrogen and nearly three times as much phosphorous as its 20-year average from the Lake to the estuaries. *Id.* A National Academies of Sciences, Engineering and Medicine report found that "the massive harmful cyanobacterial blooms" on Lake Okeechobee and in the St. Lucie and Caloosahatchee estuaries are "caused by unnaturally high levels of phosphorous and nitrogen in the lake." AR_006198.

---

[6] The period of simulation for the LORS model was 1965-2000. AR_001543.
[7] The "water year" is from May to April. The administrative record does not include similar discharge information for the 2019 water year, May 2018-April 2019.

These HABs include cyanobacteria or blue-green algae that pose risks to humans, create dangerous conditions in South Florida's national wildlife refuges and state aquatic preserves, and harm federally protected species. Because the Corps has a continuing duty to review the environmental impacts of LORS, its failure to take a hard look at the significant direct, indirect, and cumulative environmental effects that LORS has on people, animals, and ecosystems downstream of Lake discharges is a violation of NEPA. *Marsh*, 490 U.S. at 374. Indeed, the record reflects that a number of the significance criteria in the NEPA implementing regulations are clearly satisfied. *See* 40 C.F.R. § 1508.27(b).

### 1.   LORS Significantly Impacts Public Health and Safety

Although the 2007 SEIS did not find that LORS would have a significant impact on public health or safety as it relates to HABs, new information and circumstances in record evidence show that LORS is having a significant impact on public health and safety. In 2007, the Corps stated that LORS "represents the best operational compromise at this time to improve the environmental health of certain major ecosystems, while providing for public health and safety as it pertains to" Lake regulation and the HHD. AR_001011. But it has since become clear that LORS poses a significant risk to public health and safety in the form of harmful algal blooms. AR_010160 (Corps admitting "HABs that have occurred on Lake Okeechobee and in the downstream estuaries have not only impacted the surrounding communities that are dependent on tourism, but have also posed risk to the health and human safety."); AR_025414 (Gov. DeSantis explaining to the Corps "discharges from Lake O into the Caloosahatchee and St. Lucie estuaries have taken a major toll on the economy, environment and quality of life of many Florida communities."); AR_025379 (Gov. DeSantis explaining to the Corps "discharges from Lake Okeechobee have contributed to significant environmental problems that have plagued communities on both coasts of Florida for years.").

The Corps must prepare or supplement an environmental impact statement "if substantial questions are raised as to whether a project may cause significant degradation of some human environmental factor." *Klamath Siskiyou Wildlands Ctr. v. Boody*, 468 F.3d 549, 562 (9th Cir. 2006). At minimum, there are such "substantial questions" here. The Corps' continued LORS discharges influence or enhance HABs downstream, AR_009349, and are a "remaining action [that] will 'affect the quality of the human environment' in a significant manner or to a

significant extent not already considered" requiring the Corps to supplement its NEPA analysis. *Marsh*, 490 U.S. at 374.

Blue-green algae, particularly microcystis, have been found in the Lake and the Caloosahatchee and St. Lucie estuaries. AR_004471-77; AR_003825-38; AR_003308-09. HABs have become particularly hazardous in recent years and dozens of hospitalizations in the summer of 2018 contributed to the governor of Florida declaring two states of emergency, one for the blue-green algae bloom and another for the red tide that simultaneously devasted wildlife on the west coast of Florida. AR_008196; AR_012881.

According to one leading expert, "[c]yanotoxins are among the most potent toxins known, far more potent than industrial chemicals." AR_011605. These blue-green algae are hepatoxins and have been linked to poisoning and cancer,[8] and contain a toxin that may cause to neurodegenerative diseases like ALS and Parkinson's. AR_003825-38. People who live near cyanobacteria blooms are likely to inhale these toxins deep into their lungs and those who risk being exposed to the waterborne toxins may have an increased risk of neurodegenerative disease. AR_009386-88; AR_002715-20. Exposure from recreational water sources can occur through incidental ingestion while recreating; contact with the skin during activities like swimming, wading, kayaking, fishing, and surfing; and inhalation as waterborne cyanotoxins are aerosolized. AR_004629; AR_026551-52. Researchers at Florida Gulf Coast University found that toxins can be inhaled and reach deep into the lungs, AR_009386-87, and recently documented airborne particles of cyanobacteria more than a mile inland from any retention ponds and three miles from the Caloosahatchee River. *Id.*

Non-recreational exposure can occur through the consumption of cyanotoxin-contaminated drinking water and food (including fish). *Id.* Several studies have demonstrated bioaccumulation of cyanotoxins and transfer through the food chain, and reach humans through the consumption of fish. AR_004635-36. A study in Martin County found subsistence fishers fishing in waters with microcystin caught fish with microcystin, and then shared that fish with children, pregnant women, and the elderly several times a week. AR_0014166-71. Exposure to these toxins can result in gastrointestinal, dermatologic, respiratory, and neurologic disorders, as well as cancer. AR_004628-43.

---

[8] A hepatoxin is a toxic chemical that damages the liver.

A study sampling cyanobacteria in the St. Lucie during the 2016 HAB event detected concentrations of microcystins that greatly exceeded World Health Organization Guideline Values for drinking and recreational water, and also detected neurotoxins and BMAA. AR_008136. In 2017, samples from the Lake had the highest recorded concentration of microcystin collected in the past five years. AR_008196. In August 2018, the Florida Department of Environmental Protection collected water samples with toxic algae at the rate of 110 parts per billion (ppb), 10 times the level the World Health Organization has determined to be hazardous for humans in recreational waters. AR_009355. Testing detected even higher levels in July 2018, at 154.38 ppb, and in 2016, at 33,000 ppb. *Id.* Dozens of people have been hospitalized after being exposed to the toxic algae, which doctors describe as a "health hazard." *Id.* Additional research is underway at Florida Atlantic University after taking blood, urine, nose, and throat swab samples from people exposed to the 2018 bloom. AR_013057-58.

Studies have shown that bottlenose dolphins that have died in the Indian River Lagoon have similar concentrations of BMAA in their brains as humans that have died of neurodegenerative diseases. AR_003008-09. Bottlenose dolphins with detectable levels of BMAA in their brains also displayed degenerative damage similar to Alzheimer's, Lou Gehrig's disease, and Parkinson's disease in humans. AR_009482-95. The dolphins studied included seven that beached themselves in 2005 along the Atlantic, the Indian River Lagoon, the Banana River and Gulf of Mexico. AR_009483. Impacted fish, shrimp, and crabs in Florida have also been found to have dangerous concentrations of BMAA. AR_003008-09.

Florida's tourism-based economy has been greatly impacted by HABs and water quality issues tied to the management of Lake discharges. Tourists and residents, like and including members of Conservation Organizations, Allen Decl.¶¶ 8-15, Nelson Decl. ¶¶ 15-19, Decl. Pimm Decl. ¶¶ 7-23, Diaz Decl. ¶¶ 15-22, Cassani Decl. ¶¶ 12-27, engage in water-based recreational activities such as swimming, fishing, boating, kayaking, paddle boarding, bird watching, and nature observation in and around the Caloosahatchee and St. Lucie rivers and estuaries. The HABs that result from the Corps' discharges of Lake water under LORS have a "significant" impact on recreation, public health, and safety that the Corps has never analyzed under NEPA. AR_001141-42. HABs do not just constitute "significant new circumstances or information relevant to" the continued management of the Lake under LORS but also demonstrate an ongoing failure by the Corps to prepare a supplemental EIS considering the

ongoing dangers HABs have to human health year after year. These impacts to the human environment need to be analyzed under NEPA, *see* 40 C.F.R. § 1508.27(b)(2), and the Corps' failure to prepare a supplemental EIS is arbitrary and capricious. 40 C.F.R. § 1502.9(c)(1)(ii).

## 2.   LORS Significantly Impacts Ecologically Critical Areas

Although the 2007 SEIS did not find that LORS would have significant impacts on the unique characteristics of the geographic area, such as ecologically critical areas, 40 C.F.R. § 1508.27(b)(3), new information and circumstances in record evidence show that LORS is significantly impacting ecologically critical areas, including national wildlife refuges, aquatic preserves, and a state park. Five national wildlife refuges are within the Caloosahatchee: J.N. "Ding" Darling National Wildlife Refuge, Pine Island National Wildlife Refuge, Matlacha Pass National Wildlife Refuge, Island Bay National Wildlife Refuge, and Caloosahatchee National Wildlife Refuge. Hobe Sound National Wildlife Refuge and a state aquatic preserve are in the Indian River Lagoon and St. Lucie Inlet. AR_012285. South of the St. Lucie Inlet lies the St. Lucie Inlet Preserve State Park and reef. AR_004653, AR_012285.

These ecologically critical areas have been significantly impacted by HABs. The Conservation Plan for the Ding Darling National Wildlife Refuge found that "blue-green algae blooms, red tides, and massive accumulation of drift algae have indicated that nutrient loads to the Caloosahatchee are too high." AR_003450. The Conservation Plan also found that "[t]he result of nutrient loading combined with too much or too little freshwater flowing to the Caloosahatchee River is a degraded estuarine ecological community" with documented "declines in the abundance and diversity of marine and estuarine species" and a "lack of suitable habitat" that causes stress for manatees and wood storks. AR_003450.

The Corps must prepare a Supplemental EIS to evaluate the impacts HABs are having on these ecologically critical areas. 40 C.F.R. § 1508.27(b)(3).

## 3.   The Impacts of LORS on the Quality of the Human Environment are Uncertain and Highly Controversial

The impacts of LORS on the quality of the human environment are also "highly uncertain or involve unique and unknown risks," and are likewise "highly controversial" within the meaning of the NEPA regulations. 40 C.F.R. §§ 1508.27(b)(4), (5). A "controversy" sufficient to require preparation of an EIS occurs "when substantial questions are raised as to whether a

project…may cause significant degradation of some human environmental factor, or there is a substantial dispute [about] the size, nature or effect of the major Federal action." *Nat'l Parks Conservation Ass'n v. Babbitt*, 241 F.3d 722, 736 (9th Cir. 2001). Once a substantial controversy arises, NEPA places a burden on the agency to come forward with a "well-reasoned explanation" demonstrating why those responses do not suffice to create a public controversy. *Id*. at 736.

There is such a controversy in this case. Numerous conservation organizations, waterfront homeowners, recreational users, elected officials, and concerned citizens have repeatedly urged the Corps to stop discharging polluted water from the Lake into the Caloosahatchee and St. Lucie rivers and estuaries.[9] *Nat'l Parks Conservation Ass'n v. Semonite*, 916 F.3d 1075, 1086 (D.C. Cir. 2019) (holding where the Corps' assessment "has drawn consistent and strenuous opposition" from other agencies and organizations "the effects on the quality of the human environment are likely to be highly controversial.").

The record also contains numerous published scientific studies and articles documenting the extremely high concentrations of cyanotoxins in the Lake, rivers, and estuaries, AR_008136-9, and the risks that cyanotoxins (and BMAA found within blue-green algae) pose to human health, AR_004629-49, AR_004471-77, AR_003825-38, AR_003308-09; pets, AR_012794-95, AR_009367; and fish and wildlife. AR_003343. The dispute between Conservation Organizations and the Corps does not merely involve a disagreement of qualified experts over the "reasoned conclusions" as to what the data reveal. *Nat'l Parks v. Babbitt*, 241 F.3d at 737. Rather, the Corps has provided no reasoned explanation as to why a supplemental EIS is not warranted in view of this data and information. These studies cast serious doubt upon the reasonableness of the Corps' failure to prepare a supplemental EIS for LORS. *Id.* at 736. The record evidence demonstrates that the effects of LORS are both uncertain and highly controversial under 40 C.F.R. §§ 1508.27(b)(4)-(5) and therefore, the Corps must supplement its 2007 SEIS.

---

[9] *See* AR_26595-26658; AR_26661-76; AR_26678-83; AR_26685-88; AR_26691-27206; AR_27208-27433; AR_27437-28149; AR_28156-28316; AR_25294-25345; AR_25358-77; AR_25383-25413; AR_25443-25545; AR_25580-93; AR_25604-25675; AR_25758-25787; AR_25236-37, AR_25379, AR_25414 (letters from Gov. DeSantis); AR_26677 (Palm Beach County); AR_26689-90 (Okeechobee County); AR_27207 (Hendry County); AR_27434-36 (Lee County); AR_28150-55 (Martin County); AR_24218-19 (Glades County); AR_26659-60, (City of Sanibel); AR_26684 (City of Okeechobee); AR_28317-36 (City of West Palm Beach).

### 4.   LORS Significantly Impacts Federally Listed Species and Critical Habitat

Although the 2007 SEIS did not find that LORS would adversely affect endangered and threatened species or their habitat as a consequence of LORS-influenced HABs, 40 C.F.R. § 1508.27(b)(9), new information and circumstances in record evidence shows that LORS is having a significant impact on listed species and critical habitat. The 2007 DEIS did not take into account the downstream effects the long-term discharges would have on the critical habitat of listed species or the health of their environment. AR_116354-55. The 2007 SEIS did not analyze the effects of HABs on specific listed species, and only briefly mentioned that the blooms "produce toxic or harmful effects" on people and animals living in or near the water. AR_001141.

Since 2007, BMAA concentrations in animals exposed to cyanobacteria have been observed in Florida, including moderate amounts in mollusks and high concentrations in fish in the Caloosahatchee River. AR_003334-47. Red tide and blue-green algae blooms have individually, collectively, synergistically, and cumulatively killed tens of thousands of tons of marine wildlife, including ESA-listed sea turtles, Florida manatees, and smalltooth sawfish.[10] The Corps' continued management of the Lake under LORS is having an adverse impact on "threatened and endangered wildlife species, through habitat loss, loss of connectivity with other habitats, displacement . . ." and the Corps must fully analyze it by supplementing its NEPA analysis. *Wyoming v. USDA*, 661 F.3d 1209, 1246 (10th Cir. 2011).

The failure of the Corps to prepare a supplemental EIS to address the entire scope of the project, with its significant impact on the formation of HABs' adverse effects on listed species, is arbitrary and capricious under NEPA, as the purpose of NEPA is to "ensure that 'the agency will not act on incomplete information, only to regret its decision after it is too late to correct." *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 557 (9th Cir. 2000); *see also Defs. of Wildlife v. Bureau of Ocean Energy Mgmt., Regulation, & Enf't.*, 791 F. Supp 2d 1158, 1177-78 (S.D. Ala. 2011) (declining to dismiss plaintiff's claim where the federal agency continued to

---

[10] AR_013063-65; AR_013090-92; AR_003343; AR_003008-09; AR_003450-51; AR_000937; AR_003852; AR_006343-46; AR_004471-77; AR_004124-27; AR_002840; AR_002842; AR_000027-82; AR_004389-98; AR_000372-77; AR_009172-75; AR_003307; AR_004505-23; AR_013093-98; AR_000265-73; AR_000048-57; AR_002705-14; AR_001380-83; AR_008130; AR_013099-103; AR_013066-67.

perform discretionary actions without updating its NEPA analysis with new information from the *Deepwater Horizon* accident).

### 5. Significant New Information Shows Climate Change Worsens HABs

The Corps has likewise failed to assess significant new information regarding the synergistic effects of LORS and climate change on HABs. New scientific information explains that climate change exacerbates the growth of HABs by leading to favorable conditions for blue-green algal blooms, including warm waters, changes in salinity, increases in atmospheric carbon dioxide concentrations, changes in rainfall patterns, sea level rise, and high nutrient levels. AR_004592-94; AR_005664-67; AR_008569-72; AR_002574-76; AR_002878-89; AR_023501-02; AR_004629; AR_005884-85. The Corps did not analyze the cumulative environmental impacts of climate change on LORS or the HABs it facilitates, instead stating simply, "[a] large portion of uncertainty that exists in estimating performance measures is caused by such factors as natural climate variability, anthropogenic climate change, and sea level rise." AR_001545. The Corps has arbitrarily and capriciously failed to prepare supplemental NEPA analysis in response to the climate change documents available, and in so doing, has "entirely failed to consider an important aspect of the problem." *Motor Vehicle Mfr. Ass'n. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Miccosukee Tribe of Indians v. United States*, 566 F.3d 1257, 1264 (11th Cir. 2009); *See also AquAlliance v. United States Bureau of Reclamation*, 287 F. Supp. 3d 969, 1031-32 (E.D. Cal. 2018) (finding the agency failed to adequately consider under NEPA how climate change would exacerbate the environmental impacts of water transfers due to less snowpack and stream flows) (citing *Wild Fish Conservancy v. Irving*, 221 F. Supp. 3d 1224, 1233-34 (E.D. Wash. 2016) (finding a biological opinion arbitrary and capricious where the administrative record included discussions of climate change impacts on stream flow but the agency failed to discuss the potential effects of climate change on a fish hatchery's operations and water use).

The failure to incorporate climate change impacts into NEPA analysis implicates a number of the significance criteria, including "whether the action is related to other actions with . . . cumulatively significant impacts." 40 C.F.R. § 1508.27(b)(7). In similar situations where agencies failed to consider a project's impacts along with the current and projected impacts of climate change, courts have found the agency's decision arbitrary and capricious for failing to consider such a fundamental factor. *See Pac. Coast Fed'n of Fishermen's Ass'n v. Gutierrez*, 606

F. Supp. 2d 1122, 1183-84 (E.D. Cal. 2008) (invalidating a biological opinion under the ESA for a large-scale water project where the agency assumed that current climatic conditions would continue for the 25-year duration of the project); *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 723 F. Supp. 2d 1247, 1274 (E.D. Cal. 2010) (agency failed to consider the impacts of climate change in biological opinion for two dam projects). The Corps must consider this significant new information in a supplemental EIS and provide a fresh hard look at operations under LORS.

> **B. The Corps Failed to Consider the Significant New Circumstances and Information Regarding the Environmental Impacts of Operating under LORS Beyond 2010.**

The Corps must also supplement its NEPA analysis regarding its ongoing management of Lake Okeechobee and the toxic discharges to the Caloosahatchee and St. Lucie rivers and estuaries because of the substantial change the Corps has made to LORS by extending it well-beyond its intended interim, three-year lifespan. The Corps conducted its last "hard look" at LORS 13 years ago when it anticipated that it would revise the schedule again in 2010.

> The Lake Okeechobee regulation schedule will be revised again around 2010. The current revision of the schedule will provide lessons for improved understanding of how well the current water management infrastructure can handle extreme weather events, and we have already identified several additional analysis tools and methods that should be used in the upcoming revision process. Although this current revision to the schedule does not adequately meet all the needs and desires of the competing lake interests, the next revision to the schedule, with the additional water management infrastructure that is assumed to be in place at that time, will likely approach more closely the goal of balanced and shared adversity as it relates to the multiple objectives of water management in and around Lake Okeechobee.

AR_001414. The 2007 SEIS shows that the Corps' analysis of LORS as an ongoing operating system for the Lake assumed a new EIS would be conducted in 2010. AR_001338-41. The repercussions of perpetually operating the so called "interim schedule" must be addressed immediately. "NEPA is not designed to postpone analysis of an environmental consequence to the last possible moment[,] [r]ather, it is designed to require such analysis as soon as it can reasonably be done." *Kern*, 284 F.3d at 1072; *see also Miccosukee Tribe of Indians v. United States*, 420 F. Supp. 2d 1324, 1346 (S.D. Fla. 2006) (ordering the Corps to issue a supplemental EIS within two months). Instead of supplementing its 2007 SEIS as required by law, the Corps

has ignored its obligation and repeatedly stated that it intends to operate under LORS until at least 2022, when it hopes either the HHD repairs or certain CERP projects will have been completed. Answer, ECF No. 21 ¶¶ 120, 129, 130; AR_009912. These are the same triggers the Corps expected to come to pass in 2010 when it approved LORS in 2007.

And it is not just that far more than three years have gone by. As explained, circumstances have dramatically changed. The record shows there are more HABs occurring and that they may be attributable to LORS. The Corps itself has found "Economic losses to the Caloosahatchee and St. Lucie estuaries associated with HABs in recent years is assumed to be significant" and implementing changes in LORS is expected "to reduce economic losses that could result from HABs." AR_010186. Furthermore, the stormwater treatment areas (which facilitate southward, as opposed to east and westward, movement of Lake water) were presumed to provide an annual average of approximately 60,000-64,000 acre feet of treatment and storage, but in the last four years have been expected to provide an annual average of 200,000-300,000 acre feet of treatment and storage. AR_010184; AR_001214; AR_001391; AR_001052. Moreover, the precipitation data the Corps used for modeling LORS is now 20 years old. AR_001543. Finally, "if the EIS concerns an ongoing problem, EIS's more than five years old should be carefully examined to determine" if an EIS supplement is necessary. Forty Most Asked Questions Concerning CEQ's National Environmental Policy Act Regulations, 46 Fed. Reg. at 18,026. The Corps cannot continue to flout its statutory obligations by operating under LORS indefinitely without analyzing this new information or the effects of changing the project from interim to permanent. *Miccosukee Tribe of Indians of Florida v. United States*, No. 08-21747-CIV-UNGARO, 2008 WL 11332080, at *2 (S.D. Fla. Nov. 14, 2008) ("[i]f the post-EIS changes in the project will have a significant impact on the environment that has not previously been covered by the original EIS, an SEIS is necessary.").

### C. No Other Action the Corps Has Taken Relieves the Corps of Its NEPA Obligations to Supplement LORS

When an agency action is ongoing, NEPA requires the agency to immediately supplement its analysis. *Norton*, 542 U.S. at 73. Agencies "shall prepare supplements" to their EISs where the agency makes substantial changes or there are significant new circumstances or information relevant to environmental concerns and bearing on the action or its impacts. 40 C.F.R. § 1502.9(c). The use of the word "shall" establishes a mandatory duty. *Marsh*, 490 U.S. at 372.

While agencies may use internal, non-NEPA procedures and documents, such as a supplemental information report, to determine if new information requires preparation of a supplemental NEPA document, such documents may not "serve as a substitute," and in any event the record here does not indicate the Corps has undertaken such an analysis. *See Idaho Sporting Cong.,* 222 F.3d at 566. Because the Corps has not supplemented its 2007 SEIS, Conservation Organizations' injuries have not been redressed and their claims remain justiciable.

## II.  Conservation Organizations Have Standing

Conservation Organizations have established that they have Article III standing through declarations from their members, who have suffered and will continue to suffer harm due to the lack of clarity on how the Corps' actions influence HABs and the agency's failure to protect their conservation and other interests. Allen Decl.¶¶ 8-15, Nelson Decl. ¶¶ 15-19, Pimm Decl. ¶¶ 7-23, Diaz Decl. ¶¶ 15-22, Cassani Decl. ¶¶ 12-27, Estrin Decl. ¶¶ 9-12. Conservation Organizations have also met the prudential standing requirement because this claim falls under NEPA's "zone of interests." *Int'l Union v. Brock*, 477 U.S. 274, 282 (1986); *Ouachita Watch League v. Jacobs*, 463 F. 3d 1163, 1173 (11th Cir. 2006) (stating that environmental injuries fall within NEPA's zone of interests). Conservation Organizations and their members have also suffered a procedural harm from the Corps' failure to supplement its EIS on LORS. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 572 (1992).

## III. This Court May Exercise Its Discretion in Tailoring Conservation Organizations' Requested Relief

This Court should declare that the Corps' failure to prepare a supplemental EIS violates NEPA and the APA because the Corps' ongoing action of operating LORS without preparing a supplemental EIS is arbitrary and capricious, not in accordance with law, and in violation of procedure required by law, and because this failure also constitutes a failure to take discrete action required by law within the meaning of the Supreme Court's analysis of 706(1). The Court should hold that a supplemental EIS must be prepared and order the Parties to confer on a schedule and process in an effort to reach an agreement.

Section 706(1) of the APA grants the court the power to "compel agency action unlawfully withheld or unreasonably delayed," and NEPA requires federal agencies to perform their NEPA obligations "*before* making a decision with environmental impacts." *Wilderness Watch v.*

*Mainella*, 375 F.3d 1085, 1096 (11th Cir. 2004) ("NEPA impose procedural requirements *before* decisions are made in order to ensure that those decisions take environmental consequences into account."); *see also Defs. of Wildlife v. Salazar,* 877 F. Supp. 2d 1271, 1301-02 (M.D. Fla. 2012) (holding the Park Service's decision to open off-road vehicle trails in Big Cypress National Preserve before supplementing its NEPA analysis arbitrary and capricious and requiring it to perform a supplemental analysis prior to reopening the trails.); *Mainella*, 375 F.3d at 1096 (holding that "[p]ermitting an agency to avoid a NEPA violation through a subsequent, conclusory statement that it would not have reached a different result even with the proper analysis would significantly undermine the statutory scheme.").

While the Court has jurisdiction to vacate and enjoin the underlying action, *see Fed. Power Comm'n v. Idaho Power Co.*, 344 U.S. 17, 20 (1952) ("[T]he function of the reviewing court ends when an error of law is laid bare. At that point the matter once more goes to the . . . [agency] for reconsideration"); *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1290 (11th Cir. 2015) (acknowledging that "vacatur . . . is the ordinary APA remedy" (quoting *Sierra Club v. Flowers*, 526 F.3d 1353, 1369 (11th Cir. 2008)), Conservation Organizations do not seek that here. Instead they seek to redress their injuries with an order from this Court declaring the Corps is in violation of NEPA and the APA and requiring the agency to immediately conduct further analysis and supplement the 2007 SEIS by a date-certain. *Miccosukee Tribe of Indians*, 420 F. Supp. 2d at 1345 (requiring the Corps supplement its environmental impact statement within two months.); *see also Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 1006 (5th Cir. 1981) (holding "the most important remedy available is that the Corps must immediately prepare a supplementary EIS . . . and that "[i]n order to encourage rapid and thorough compliance with NEPA, it is appropriate to impose some injunctive remedy until a final supplemental EIS is filed."). Such modest relief is warranted and long overdue.

## CONCLUSION

For the foregoing reasons, Conservation Organizations respectfully request that this Court grant their motion for partial summary judgment, declare the Corps is violating the APA and NEPA, and order the Corps to immediately supplement the 2007 SEIS.

Dated this 8th day of June, 2020.          Respectfully submitted,

*/s/Jaclyn Lopez*   
JACLYN LOPEZ, Trial Counsel
FL Bar No. 96445
Center for Biological Diversity
P.O. Box 2155
St. Petersburg, FL 33731
Tel: (727) 490-9190
jlopez@biologicaldiversity.org

*/s/Jason Totoiu*   
JASON TOTOIU
FL Bar No. 871931
Center for Biological Diversity
P.O. Box 2155
St. Petersburg, FL 33731
Tel: (561) 568-6740
jtotoiu@biologicaldiversity.org